Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel:  818.296.9508

Cole Mackey (Admitted *Pro Hac Vice*)
cole@mackey.legal
Mackey Law Firm PLLC
9525 Katy Freeway, Suite 260
Houston, TX 77024
Tel:  346.954.8287

Attorneys for *Defendants*
NICHOLAS PATRICK KARLL & ECO-PACKAGING
SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPRENTA SERVICES, INC., a Texas corporation; MIKE SANCHEZ, an individual, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS PATRICK KARLL, an individual, ECO-PACKAGING SOLUTIONS, INC., a California corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-06177-GW-PVC <br><br> **NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PROC. 11; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed Concurrently With: Declaration of Michael C. Mackey & Exhibits in Support Thereof; [Proposed] Order] <br><br> <u>Hearing</u>: <br><br> Date:  May 5, 2022 <br> Time: 8:30 a.m. <br> Ctrm: 9D |

**TO PLAINTIFF AND ITS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on **May 5, 2022** at 8:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 9D of the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 6C, 6th Floor, Los Angeles, California 90012, Defendants Nicholas Patrick Karll and Eco Packaging Solutions, Inc. (together, "Defendants") will and hereby do move the Court, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for an order sanctioning Plaintiffs Imprenta Services, Inc. and Mike Sanchez (together, "Plaintiffs") and its counsel, Frederick Douglas, and ordering Plaintiffs and their counsel to pay all attorneys' fees and expenses incurred by Defendants in defending the causes of action for improper inventorship and inequitable conduct contained in the Complaint [Docket #1] (the "Motion").   In the event that this Court is inclined to grant this Motion, Defendants request that this Court set a briefing schedule regarding Defendants request for the costs and attorneys' fees it has incurred in defense of the improper inventorship and inequitable conduct claims contained in the Complaint in this matter.

Defendants make this motion on the grounds that both Plaintiffs and their counsel were fully aware that the Complaint's claims for improper inventorship and inequitable conduct were frivolous and completely baseless by April 7, 2020, at the latest, and proceeded to file the instant action on July 10, 2020.  Specifically, as further detailed in Defendants' Motion for Partial Summary Judgment of Correct Inventorship and No Inequitable Conduct, filed on March 29, 2022 (the "MSJ"), Plaintiffs and their counsel filed and then proceeded with the claims for improper inventorship and inequitable conduct knowing they were provably false, that is, that they contributed to the conception of the inventions claimed in the '375 Patent (improper inventorship claim) nor can they prove by clear and convincing evidence that any information that was but-for material to the patentability of any asserted

patent was withheld from the United States Patent & Trademark Office ("USPTO") with specific intent to deceive by any person with a duty of disclosure (inequitable conduct claim).

In accordance with Federal Rule of Civil Procedure 11(c)(2), this motion is made following the Defendants' service of a letter and proposed Motion to counsel for Plaintiff. Frederick Douglas, on July 27, 2021, as further specified in the Declaration of Michael C. Mackey, filed concurrently herewith.

This motion is based on this Notice of Motion and Motion, the concurrently filed Motion for Partial Summary Judgment of Correct Inventorship and No Inequitable Conduct and the collateral declarations and exhibits filed in support thereof [Docket #'s 69-72], the Declaration of Michael C. Mackey and exhibits in support thereof, the files and records in this action, and any such additional argument or materials as may be submitted to the Court before the time of the decision in this matter.

Dated: March 30, 2022                   Respectfully submitted,

                                        witkow | baskin
                                        Mackey Law Firm PLLC

                                        By: /s/ Michael C. Mackey
                                        Brandon J. Witkow
                                        Cole Mackey

                                        *Attorneys for Defendants*
                                        NICHOLAS PATRICK KARLL & ECO
                                        PACKAGING SOLUTIONS

**MOTION FOR SANCTIONS [FED. R. CIV. PROC. 11]**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS & AUTHORITIES ................................................. 1

ALLEGED IMPROPER INVENTORSHIP ........................................................... 1

    Plaintiffs Only Allege That Mr. Sanchez Contributed this Second Inner Plate ........................................................................................................... 2

    Plaintiffs Fail to Disclose Earlier Communications ........................................ 2

    Mr. Sanchez's Email Actually Shows Defendant Karll's Design ................... 4

    Defendant Karll Had Already Completed Conception .................................... 6

    Defendant Karll's Conception Was Complete and Operative ....................... 14

    Plaintiffs and Their Counsel Knew of Defendant Karll's Earlier Conception ................................................................................................... 15

ALLEGED INEQUITABLE CONDUCT ............................................................ 15

    Everything Plaintiffs and Their Counsel Cite Was From Defendant Karll ............................................................................................................ 16

    Nothing Plaintiffs and Their Counsel Cite was Publicly Available.............. 17

PLAINTIFFS' COUNSEL CONDUCTED NO INVESTIGATION .................... 18

BEHAVIOR OF PLAINTIFFS COUNSEL WARRANTS SANCTIONS ........... 19

BEHAVIOR OF LAINTIFFS WARRANTS SANCTIONS ................................ 20

witkow | baskin

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Applied Med. Res. Corp. v. Tyco Healthcare Group LP,*
    2014 U.S. Dist. LEXIS 101157 (C.D. Cal. July 11, 2014) .................................6

*Burroughs Wellcome Co. v. Barr Labs, Inc.,*
    40 F.3d 1223 (Fed. Cir. 1994) ....................................................................6

*Christian v. Mattel, Inc.,*
    286 F.3d 1118 (9th Cir. 2002) ...................................................................1

*Estate of Blue v. County of Los Angeles,*
    120 F.3d 982 (9th Cir. 1997) ......................................................................1

*In re Bayer,*
    568 F.2d 1357 (CCPA 1978) ......................................................................18

*In re Cronyn,*
    890 F.2d 1158 (Fed. Cir. 1989) ..................................................................18

*In re Hall,*
    781 F.2d 897 (Fed. Cir. 1986) ...................................................................17

*In re Wyer,*
    655 F.2d 221 (CCPA 1981 .........................................................................17

*Jazz Pharmaceuticals v. Amneal Pharmaceuticals,*
    895 F.3d 1347 (Fed. Cir. 2018) ..................................................................17

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
    360 F.3d 1295 (Fed. Cir. 2004) ...................................................................1

*R. Prasad Indus. v. Douglas,*
    673 Fed. Appx. 676 (9th Cir. 2016)...........................................................20

*R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.,*
    2014 U.S. Dist. LEXIS 133560 (D. Ariz. Sep. 23, 2014) ................................19

## <u>STATUTES</u>

35 U.S.C. § 102(a)(1) ................................................................16, 17, 18

35 U.S.C. § 102(b)(1)(A) ........................................................................16

Fed. R. Civ. P. 9 ......................................................................................16

Fed. R. Civ. P. 11(b)(1) ..........................................................................20

Fed. R. Civ. P. 11(b)(2) ..........................................................................20

Fed. R. Civ. P. 11(b)(3) ..........................................................................20

Fed. R. Civ. P. 11(c)(4) ..........................................................................19

Fed. R. Civ. P. 11(c)(5)(A) .....................................................................20

witkow | baskin

### MEMORANDUM OF POINTS & AUTHORITIES

Under Rule 11, sanctions may be imposed "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004.)

Here, both Plaintiffs and their counsel were fully aware that their claims were frivolous and completely baseless by April 7, 2020, at the latest, and proceeded to file the instant action on July 10, 2020. Plaintiffs allege three causes of action: improper inventorship, inequitable conduct, and non-infringement. Defendants believe that all three causes of action are frivolous and warrant sanctions. However, in the interest of judicial efficiency, Defendants will focus on the improper inventorship and inequitable conduct allegations in this motion.

### ALLEGED IMPROPER INVENTORSHIP

In paragraph 31 of the Complaint [Docket #1], Plaintiffs and their counsel allege that Plaintiff Mike Sanchez is "the first, true, and original inventor of the inventions claimed in the '375 Patent." In paragraph 14 of the Complaint, Plaintiffs and their counsel allege that "[o]n January 12, 2018, at about 12:58 am (Texas time), Mike Sanchez, President of Imprenta emailed to Karll an improved design that he conceived and reduced to practice to enhance a container lid that Imprenta sold to Defendants. The email message indicated Mike Sanchez developed a new design that omitted the gluing of the inner plate. Mr. Sanchez remarked, 'We are changing this inner plate to a second inner lid indicated in red. … This January 12, 2018 email included a PDF attachment, representing the new design, including the newly

incorporated red inner cap depicted in the attachment." This January 12, 2018 email with attachment is attached to the Complaint as Exhibit B.

**Plaintiffs Only Allege That Mr. Sanchez Contributed this Second Inner Plate**

In the email chain attached to the Complaint as Exhibit C, Plaintiff Sanchez confirmed that all other previous features of the container were not changed in the design shown in this January 12, 2018 email. *See, e.g.*, paragraph 15 of the Complaint. Thus, Plaintiffs entire allegation of Plaintiff Sanchez's alleged contribution to the inventions claimed in the '375 Patent appears to be this "second inner lid indicated in red" in the January 12, 2018 email (attached to the Complaint as Exhibit B), which is shown below.



**Plaintiffs Fail to Disclose Earlier Communications**

However, in making these allegations in the Complaint, Plaintiffs do not disclose that this January 12, 2018 email was not the first communication between the parties related to these containers. Rather, the first communication between the parties occurred on December 21, 2017, more than three weeks before the January 12, 2018 email, when Defendant Karll called Plaintiff Sanchez. During this

December 21, 2017 telephone conversation, Defendant Karll discussed his designs with Plaintiff Sanchez.   During this December 21, 2017 telephone conversation, Defendant Karll emailed drawings and pictures of his designs to Plaintiff Sanchez. *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on October 26, 2020 as Document 14-1 at pages 28-39 of 72.  Relevant portions of these drawings and pictures are reproduced below:



**MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]**







**Mr. Sanchez's Email Actually Shows Defendant Karll's Design**

The January 12, 2018 email simply reflects a design Defendant Karll shared with Plaintiff Sanchez on December 21, 2017, more than three weeks prior to the January 12, 2018 email.   While Plaintiffs only allege that Plaintiff Sanchez contributed the "second inner lid indicated in red" in the January 12, 2018 email, there is nothing in the January 12, 2018 email that Defendant Karll had not previously shared with Plaintiff Sanchez on December 21, 2017.

The December 21, 2017 emails from Defendant Karll show the container body of Plaintiff Sanchez's January 12, 2018 email.

**MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]**



January 12, 2018        December 21, 2017        December 21, 2017

The December 21, 2017 emails from Defendant Karll show the inner lid of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018        December 21, 2017        December 21, 2017

The December 21, 2017 emails from Defendant Karll show the plate, which Plaintiffs refer to as referred to as a second the inner lid, of Plaintiff Sanchez's January 12, 2018 email.



MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]

January 12, 2018          December 21, 2017          December 21, 2017

The December 21, 2017 emails from Defendant Karll show the outer lid of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018          December 21, 2017

Thus, there was nothing in Plaintiff Sanchez's January 12, 2018 email that Defendant Karll had not previously shared with Plaintiff Sanchez.

### Defendant Karll Had Already Completed Conception

Even if there were anything in Plaintiff Sanchez's January 12, 2018 email that was not shown in Defendant Karll's December 21, 2017 emails, it would not change the fact that Defendant Karll had completed conception of the claimed inventions prior to Plaintiff Sanchez's January 12, 2018 email.  Put another way, by the time Plaintiff Sanchez sent his January 12, 2018 email, Defendant Karll's conception of the claimed inventions had already been completed.  *See, e.g., Applied Med. Res. Corp. v. Tyco Healthcare Group LP*, 2014 U.S. Dist. LEXIS 101157 at 65, (CACD July 11, 2014).

"Conception is the touchstone of inventorship, the completion of the mental part of invention."  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  "Conception is the formation of a definite and permanent idea of the complete and operative claimed invention in the mind of the inventor."  *Applied Med. Res. Corp.* at 101 (*citing Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)).  Conception therefore speaks to the inventions, as claimed in the '375 Patent.

Claims 1 and 18 of the '375 Patent each recite a "child resistant container." FIG. 1, among others, of the '375 patent shows an embodiment of a "child resistant container," with the container identified by reference numeral 100.



FIG. 1

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show a "child resistant container," as recited in claims 1 and 18 of the '375 Patent.

**Child- Resistant Container**

  

Claims 1 and 18 of the '375 Patent also each recite "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall."  FIG. 2B, among others, of the '375 patent shows an embodiment of "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall," with the container body identified by reference numeral 101.



FIG. 2B

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall," as recited in claims 1 and 18 of the '375 Patent.



Claims 1 and 18 of the '375 Patent also each recite "a cap assembly configured to couple to the container body for closing the container."  FIGs. 1, 3B, and 3C, among others, of the '375 patent show an embodiment of "a cap assembly configured to couple to the container body for closing the container," with the cap assembly identified by reference numeral 114.



FIG. 1          FIG. 3B          FIG. 3C

**MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]**

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a cap assembly configured to couple to the container body for closing the container," as recited in claims 1 and 18 of the '375 Patent.



Claims 1 and 18 of the '375 Patent also each recite "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface." FIGs. 1, 3A, 3B, and 3C, among others, of the '375 patent show an embodiment of "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface," with the metal inner cap identified by reference numeral 105 and the metal outer cap identified by reference numeral 102.



The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface," as recited in claims 1 and 18 of the '375 Patent.



Claims 1 and 18 of the '375 Patent also each recite "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap." FIGs. 3D, 3E, 5B, and 6, among others, of the '375 patent show several embodiments of "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap," with the plate identified by reference numeral 110.



The drawings attached to Defendant Karll's December 21, 2017 emails show one embodiment of "a metal plate disposed between the inner cap and the outer cap,

wherein the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.



The above embodiment of the metal plate is exactly the embodiment shown in Fig. 5A of the '375 Patent.



The '375 Patent                    Defendant Karll's December 21, 2017 email

The January 3, 2018 quotation, attached to the Complaint as Exhibit A, refers to Defendant Karll's design as a "[r]ound [t]in [c]ontainer – [c]hild [r]esistant 3-piece mushroom lid with debossed plate glued inside the lid with screw lid cap locked inside the outer lid and seamless bottom."  The January 12, 2018 email, attached to the Complaint as Exhibit B, referring to Defendant Karll, explains that "your inner plate construction which was going to be glued to the inside of the outer lid."  Thus, there can be no credible dispute of the fact that Plaintiffs understood that Defendant Karll's design included, at least as of December 21, 2017, that "the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.

MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]

Thus, the drawings and pictures attached to Defendant Karll's December 21, 2017 emails show that Defendant Karll, by that time, had completed conception of at least one embodiment of "[a] child resistant container, comprising: a container body having a central longitudinal axis, a closed base, an open top and an exterior wall; and a cap assembly configured to couple to the container body for closing the container; wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface; a metal plate disposed between the inner cap and the outer cap , wherein the plate is rotationally and axially fixed relative to the outer cap," recited in claims 1 and 18 of the '375 Patent.

It is important to note, however, that the "metal plate" recited in claims 1 and 18 of the '375 Patent is not expressly limited to this exact embodiment.  Of course, the designs that Defendant Karll shared with Plaintiff Sanchez on December 21, 2017 were not limited to this exact embodiment either.

The pictures attached to Defendant Karll's December 21, 2017 emails show another embodiment of "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.



While apparently not in dispute, the designs Defendant Karll shared with Plaintiff Sanchez on December 21, 2017 also showed the other limitations of the

claims.   For example, the drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a first coupler coupled to the inner cap" comprising one or more grooves.



The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a second coupler coupled to the plate" comprising one or more tongues.



### **Defendant Karll's Conception Was Complete and Operative**

The pictures attached to Defendant Karll's December 21, 2017 emails actually show a fully operative prototype.  Defendant Karll even sent Plaintiffs a "functional prototype" by January 4, 2018.  *See, e.g.*, Exhibit A.  Exhibit A shows Defendant Karl asking for Plaintiffs address in China and confirming shipment of the prototype.  This prototype was substantially as shown in the pictures attached to Defendant Karll's December 21, 2017 emails.

The fact that Defendant Karll's designs, shown in his December 21, 2017 emails to Plaintiff Sanchez, were complete and operative is not in dispute.  Nothing in the Complaint, or Plaintiff Sanchez's January 12, 2018 email attached thereto,

suggest that the design shown in the drawings and pictures attached to Defendant Karll's December 21, 2017 emails is inoperative. Rather, Plaintiff Sanchez's January 12, 2018 email merely suggested adopting one of Defendant Karll's embodiments over another, explaining that one "would have been more costly." *See* Exhibit B to the Complaint.

Thus, there is no legitimate argument that Defendant Karll did not have complete conception of multiple operative embodiments of the claimed invention well before Plaintiff Sanchez's January 12, 2018 email.

**<u>Plaintiffs and Their Counsel Knew of Defendant Karll's Earlier Conception</u>**

It should be beyond dispute that Plaintiff Sanchez was aware of Defendant Karll's emails, and the designs shown therein, no later than December 21, 2017. Since Plaintiff "Sanchez is the President and Director of Plaintiff corporation, Imprenta," as explained in paragraph 3 of the Complaint, Plaintiff Imprenta was also aware of Defendant Karll's emails, and designs, no later than December 21, 2017.

While Plaintiffs may not have been forthcoming with their counsel, on April 7, 2020, counsel for Defendants informed counsel for Plaintiffs of Defendant Karll's December 21, 2017 emails, the designs shown therein, and how Plaintiffs inventorship allegations were frivolous, since everything in Plaintiff Sanchez's January 12, 2018 email was shown in Defendant Karll's December 21, 2017 emails. *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on October 26, 2020 as Document 14-1 at pages 28-39 of 72. Thus, counsel for Plaintiffs was aware of Defendant Karll's December 21, 2017 emails, and the designs shown therein, no later than April 7, 2020.

**<u>ALLEGED INEQUITABLE CONDUCT</u>**

In paragraph 24 of the Complaint, Plaintiffs and their counsel allege "Defendants caused the application which matured into the '375 Patent to be filed with full knowledge that the subject matter of the application had previously been invented by another and was described in a printed publication in the United States

15

by Plaintiffs more than one year prior to the April 11, 2019 filing date thereof."  In paragraph 26 of the Complaint, Plaintiffs and their counsel allege "Mike Sanchez's writings, email messages, attachments, and other printed publications constitute a valid reference that should have been disclosed to the patent examiner by Defendants."  Finally, in paragraph 28 of the Complaint, Plaintiffs and their counsel allege that failure to disclose these "publications" was fraud and constitutes inequitable conduct.

As an initial matter, while Plaintiffs point to an April 11, 2019 filing date, they know full well that the application that matured into the '375 Patent has an effective filing date of April 12, 2018.  *See* paragraph 16 of the Complaint.  Thus, nothing they point to occured more than a year before the effective filing date of the '375 Patent.

Fed. R. Civ. P. 9 requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiffs point to nothing other than "Mike Sanchez's writings, email messages, attachments, and other printed publications."  While they do not identify any specific documents with respect to this alleged fraud, Plaintiff Sanchez's January 12, 2018 email is attached to the Complaint, and therefore presumably forms the basis for this allegation. However, nothing in that email, or anything referenced in the Complaint, constitutes a valid prior art reference under well-established patent law.

35 U.S.C. 102(a)(1) states "[a] person shall be entitled to a patent unless - the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. 102(b)(1)(A) states "[a] disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if - the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor."

**Everything Plaintiffs and Their Counsel Cite Was From Defendant Karll**

As discussed above, with respect to their frivolous inventorship claims, everything shown in Plaintiff Sanchez's January 12, 2018 email was shown in Defendant Karll's December 21, 2017 emails.  Thus, anything to which Plaintiff's can point is "by another [(Plaintiff Sanchez)] who obtained the subject matter disclosed directly or indirectly from the inventor [(Defendant Karll)].  Because Plaintiff Sanchez's January 12, 2018 email was "made 1 year or less before the effective filing date," April 12, 2018, it "shall not be prior art to the claimed invention under subsection (a)(1)."  Thus, at least because Plaintiff Sanchez's January 12, 2018 email is not prior art, there can be no need to disclose it to the Patent Office.

Perhaps more troublingly, in paragraph 25 of the Complaint, Plaintiffs and their counsel allege "Defendants were aware of the existence of the aforementioned printed publication at least as early as January 1, 2018."  Yet, they do not explain how it is possible for Defendants to be aware of Plaintiff Sanchez's January **12**, 2018 email "at least as early as January **1**, 2018."  Defendants can only assume that this is a typographical error, but it is at best unclear.

### **Nothing Plaintiffs and Their Counsel Cite was Publicly Available**

In any case, in spite of their assertions, nothing they point to was actually "a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," under 35 U.S.C. 102(a)(1).

Plaintiffs' counsel knows full well that "'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication.'"  *In re Hall*, 781 F. 2d 897, 899 (Fed. Cir. 1986).  "A reference is considered publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Jazz Pharmaceuticals v. Amneal Pharmaceuticals*, 895 F. 3d 1347,1355-56 (*quoting In re Wyer*, 655 F.2d 221, 226 (CCPA 1981)).  Plaintiffs can point to nothing that constitutes a "printed publication," as that term is used in 35 U.S.C. 102,

and presumably implied in the Complaint.  *See, e.g., In re Bayer*, 568 F.2d 1357 (CCPA 1978) (an uncatalogued, unshelved master's thesis was not publicly accessible even where it was submitted to a university library); *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989) (student undergraduate theses were not publicly accessible because "they had not been either cataloged or indexed in a meaningful way").  Plaintiffs can point to nothing that was submitted to any publicly accessible repository, much less "cataloged or indexed in a meaningful way."  This is all well settled law, of which counsel for Plaintiffs should be well aware.

Rather, all Plaintiffs can point to are private emails between Plaintiff Sanchez and Defendant Karll.  In fact, Plaintiffs acknowledge that these emails were private, contradicting themselves on this point.  For example, in paragraph 32 of the Complaint, Plaintiffs and their counsel allege "Mr. Sanchez privately communicated his inventions to Defendant Karll, under the protection of a mutual non-disclosure agreement."  It should be beyond dispute that anything "privately communicated … under the protection of a mutual non-disclosure agreement" is not publicly available.

Plaintiffs have pointed to nothing that can possibly be considered a "printed publication," as that term is used in 35 U.S.C. 102 precisely because there is nothing, certainly nothing of which Defendants were aware.  At least because there is nothing properly constituting prior art of which Defendants were aware, that they did not disclose to the Patent Office, there was no fraud and no inequitable conduct.  Plaintiffs' counsel knows this to be true.  Admittedly, Plaintiffs themselves may not be aware of the law; but, that is why they hired counsel.

## **PLAINTIFFS' COUNSEL CONDUCTED NO INVESTIGATION**

It would appear that Plaintiffs' counsel has not conducted any meaningful investigation, much less "a reasonable and competent inquiry."  This was apparent in April 2020, when Defendant's counsel sent Plaintiffs' counsel a letter detailing information he apparently did not have or appreciate.  *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on October 26, 2020 as Document 14-1 at

pages 28-39 of 72.   Plaintiffs' counsel has never responded to this letter, much less rebutted the evidence Defendant's counsel presented therein.   In fact, the Complaint in this case ignores and omits the evidence Defendant's counsel presented in that letter.   Rather, Plaintiffs' counsel has apparently chosen to blindly charge ahead.

## BEHAVIOR OF PLAINTIFFS COUNSEL WARRANTS SANCTIONS

Sanctions imposed under Rule 11 are "to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Plaintiff's counsel knew, before filing the Complaint, that the '375 Patent has an effective filing date of April 12, 2018.  Plaintiff's counsel knew, before filing the Complaint, that Mr. Sanchez did not legally "conceive" of any of the inventions described in the '375 Patent, if for no other reason than Mr. Karll had previously conceived of those inventions and communicated them to Mr. Sanchez.  Plaintiff's counsel knew, before filing the Complaint, that Mike Sanchez's email messages and attachments sent to Defendants, particularly those "privately communicated…under the protection of a mutual non-disclosure agreement," as described in paragraph 32 of the Complaint, are not and could never be "printed publications" or any other form of "valid reference that should have been disclosed to the patent examiner," as suggested in paragraph 26 of the Complaint.

In the face of clear evidence, provided by Defendants' counsel before the Complaint was filed, that any allegation of improper inventorship or inequitable conduct was completely baseless, counsel for Plaintiffs signed and filed the instant Complaint with this Court, including these allegations.   This action should be sanctioned to deter similar future conduct, as well as to compensate Defendants for their attorneys' fees and expenses in defending such baseless claims.   The need to deter similar future conduct is especially important here, where counsel for Plaintiffs has previously been sanctioned for signing and filing recklessly baseless claims, and has apparently not changed his ways.  *R. Prasad Indus. v. Flat Irons Envtl. Solutions*

*Corp.*, 2014 U.S. Dist. LEXIS 133560, at \*24 (D. Ariz. Sep. 23, 2014), *aff'd sub nom., R. Prasad Indus. v. Douglas*, 673 Fed. Appx. 676 (9th Cir. 2016).

## <u>BEHAVIOR OF PLAINTIFFS WARRANTS SANCTIONS</u>

While monetary sanctions cannot be imposed "against a represented party for violating Rule 11(b)(2)," under Fed. R. Civ. P. 11(c)(5)(A), Plaintiffs themselves appear to be pursuing this action to harass Defendants, or for some other improper purpose. Fed. R. Civ. P. 11(b)(1). At the very least, as explained above, Plaintiffs were well aware that the allegations in the Complaint are baseless, have no evidentiary support, and are premised on intentional omission of key facts. Fed. R. Civ. P. 11(b)(3). Thus, Plaintiffs themselves should also be sanctioned to deter similar future conduct, as well as to compensate Defendants for their attorneys' fees and expenses in defending such baseless claims.

Defendants request that this Court set a briefing schedule regarding Defendants request for the costs and attorneys' fees it has incurred in defense of the improper inventorship and inequitable conduct claims contained in the Complaint in this matter.


Dated: March 30, 2022                    Respectfully submitted,

                                         witkow | baskin
                                         Mackey Law Firm PLLC

                                         By: /s/ Michael C. Mackey
                                         Brandon J. Witkow
                                         Cole Mackey

                                         *Attorneys for Defendants*
                                         NICHOLAS PATRICK KARLL & ECO
                                         PACKAGING SOLUTIONS

**MOTION FOR SANCTIONS [FED. R. CIV. PROC 11]**