Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel:  818.296.9508

Cole Mackey (Admitted *Pro Hac Vice*)
cole@mackey.legal
Mackey Law Firm PLLC
9525 Katy Freeway, Suite 260
Houston, TX 77024
Tel:  346.954.8287

Attorneys for *Defendants*
NICHOLAS PATRICK KARLL & ECO-PACKAGING
SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPRENTA SERVICES, INC., a Texas corporation; MIKE SANCHEZ, an individual,<br><br>      Plaintiff,<br><br>  v.<br><br>NICHOLAS PATRICK KARLL, an individual, ECO-PACKAGING SOLUTIONS, INC., a California corporation; and DOES 1-10, inclusive,<br><br>     Defendants. | Case No.: 2:20-cv-06177-GW-PVC<br><br>**DECLARATION OF MICHAEL C. MACKEY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PROC. 11 & EXHIBITS IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:  May 5, 2022<br>Time: 8:30 a.m.<br>Ctrm: 9D |

## DECLARATION OF MICHAEL C. MACKEY

I, Michael C. Mackey, declare as follows:

1.     I am an attorney at Mackey Law Firm PLLC, counsel for Defendants in the instant action. I make this declaration in support of Defendants Nicholas Patrick Karll and Eco Packaging Solutions, Inc.'s (together, "Defendants") Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (the "Motion"). Based on my own involvement in the facts and circumstances described below, I have personal knowledge of the facts set forth herein which I know to be true, except as to any matters that are stated on information and/or belief, and as to those matters, I believe them to be true.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of my letter to Plaintiffs' counsel, Frederick Douglas, on July 27, 2021, enclosing a copy of the draft Motion.

3.     Attached as Exhibit A to the draft Motion is a true and correct copy of an email string dated January 2 – 4, 2018 between Defendant Karll and various representatives and associates of Plaintiffs, which email string was also produced in this litigation bates labeled ECO000500 and attached as Exhibit C to the Appendix of Exhibits [Docket # 69-1] filed in support of Defendants' Motion for Partial Summary Judgment for Correct Inventorship and No Inequitable Conduct (the "MSJ"), filed on March 29, 2022 [Docket # 69]. *See also* Karll Declaration [Docket # 69-3], ¶ 19.

4.     On January 25, 2022, I again spoke with Plaintiffs' counsel, Frederick Douglas, to discuss Defendants' anticipated motions, including without limitation motions for summary judgment on the subjects of infringement, inventorship and inequitable conduct. Following this discussion, on January 26, 2022, I sent Mr. Douglas an email that again pointed to the factual and legal bases for the MSJ and this Motion.  I requested an additional phone call via email on January 27, 2022, and once again on January 28, 2022.  A true and correct copy of the aforementioned email

chain is attached as **Exhibit BB** to the MSJ [Docket # 69-1].  Mr. Douglas has never responded to any of the aforementioned letter/emails.

5.      Defendants request that this Court set a briefing schedule regarding Defendants request for the costs and attorneys' fees it has incurred in defense of the improper inventorship and inequitable conduct claims contained in the Complaint in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed March 30, 2022 at Houston, Texas.

_____
Michael C. Mackey

**DECLARATION OF MICHAEL C. MACKEY**

**Exhibit 1**



9525 Katy Freeway, Suite 260
Houston, TX 77024

Cole Mackey
346-954-8287 (p/f)
cole@mackey.legal

July 27, 2021

Frederic M. Douglas
15333 Culver Drive, Suite 340
Irvine, CA 92604
fdouglas@cox.net

**Re:**  *Imprenta Services, Inc., et al. v. Nicholas Patrick Karll, et al.*, **Case No. 2:20-cv-06177-PA-GJS**

Mr. Douglas:

I write in response to the Complaint filed in the above-mentioned case.  As discussed in my April 7, 2020 letter to you, we believe that this Complaint is baseless in its entirety.

I am writing to you today pursuant to Rule 11 of the Federal Rules of Civil Procedure (FRCP), which requires written notice prior to filing a motion for sanctions.  FRCP 11(c)(2).  I have attached a draft of the motion for your review.

As explained in my letter dated April 7, 2020, and the attached motion, the allegations in the Complaint concerning both Inventorship and Inequitable Conduct are frivolous and warrant sanctions.[1]

Specifically, allegations in at least paragraphs 14, 16, 24-28, and 30-38 are lacking evidentiary support and are unwarranted by existing law or any nonfrivolous argument for extension thereof. FRCP 11(b)(2 & 3).

As one example, you know that Mr. Sanchez did not legally "conceive" of any of the inventions described in U.S. Patent No. 10,513,375, if for no other reason than Mr. Karll had previously conceived of those inventions and communicated them to Mr. Sanchez.  You knew this by at least upon receipt of my letter dated April 7, 2020.

As another example, you know that Mike Sanchez's email messages and attachments sent to my clients, particularly those sent "under the protection of a mutual non-disclosure agreement" (as described in paragraph 32 of the Complaint), are not and could never be "printed publications" or any other form of "valid reference that should have been disclosed to the patent examiner."  This and other frivolous allegations are more thoroughly detailed in both my letter to you dated April 7, 2020 and the attached draft motion.

Despite your knowledge of the evidence presented in my letter dated April 7, 2020, you proceeded to sign and file the Complaint.  I can only assume that you and your clients have advanced these allegations to harass my clients, or for some other improper purpose.  FRCP 11(b)(1).

---

[1] In fact, we believe all three causes of action asserted in the Complaint are completely baseless.

Page 2

You now have 21 days to withdraw all allegations that:
1. Mr. Sanchez has, or ever had, any inventorship or ownership interest in the '375 Patent;
2. Mr. Sanchez conceived, or contributed to the conception, of any of the inventions claimed in the '375 Patent; and
3. Defendants failed to disclose anything material to patentability of the '375 Patent or otherwise committed inequitable conduct, or any form of fraud.

FRCP 11(c)(2).

If you fail to withdraw these allegations, I will be forced to file the attached motion.

Best regards,

Cole Mackey

Enclosure:     Draft motion for sanctions under FRCP 11.

Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 700
Woodland Hills, California 91364
Tel:   818.296.9508

Cole Mackey (Admitted *Pro Hac Vice*)
cole@mackey.legal
Mackey Law Firm PLLC
9525 Katy Freeway, Suite 260
Houston, TX 77024
Tel:   346.954.8287

Attorneys for *Defendants*
NICHOLAS PATRICK KARLL & ECO PACKAGING
SOLUTIONS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPRENTA SERVICES, INC., a Texas corporation; MIKE SANCHEZ, an individual,<br><br>                          Plaintiffs,<br><br>     v.<br><br>NICHOLAS PATRICK KARLL, an individual, ECO-PACKAGING SOLUTIONS, INC., a California corporation; and DOES 1-10, inclusive,<br><br>                          Defendants. | Case No.: 2:20-CV-6177-GW-PVCx<br>DEFENDANTS' FIRST RULE 11 MOTION<br><br>Judge: Hon. George H. Wu<br>Mag. Judge. Pedro v. Castillo<br><br>Initial Complaint Filed: July 10, 2020<br>Trial Date: Not set<br><br>DEMAND FOR JURY TRIAL |

## DEFENDANTS' FIRST RULE 11 MOTION

**1**
**DEFENDANTS' FIRST RULE 11 MOTION**

Under Rule 11, sanctions may be imposed "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).  When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing." *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004.)

Here, both Plaintiffs and their counsel were fully aware that their claims were frivolous and completely baseless by April 7, 2020, at the latest, and proceeded to file the instant action on July 10, 2020.  Plaintiffs allege three causes of action: improper inventorship, inequitable conduct, and non-infringement.  Defendants believe that all three causes of action are frivolous and warrant sanctions.  However, in the interest of judicial efficiency, Defendants will focus on the improper inventorship and inequitable conduct allegations in this first motion.

## ALLEGED IMPROPER INVENTORSHIP

In paragraph 31 of the Complaint, Plaintiffs and their counsel allege that Plaintiff Mike Sanchez is "the first, true, and original inventor of the inventions claimed in the '375 Patent."  In paragraph 14 of the Complaint, Plaintiffs and their counsel allege that "[o]n January 12, 2018, at about 12:58 am (Texas time), Mike Sanchez, President of Imprenta emailed to Karll an improved design that he conceived and reduced to practice to enhance a container lid that Imprenta sold to Defendants.  The email message indicated Mike Sanchez developed a new design that omitted the gluing of the inner plate.  Mr. Sanchez remarked, 'We are changing

this inner plate to a second inner lid indicated in red. … This January 12, 2018 email included a PDF attachment, representing the new design, including the newly incorporated red inner cap depicted in the attachment." This January 12, 2018 email with attachment is attached to the Complaint as Exhibit B.

**Plaintiffs Only Allege That Mr. Sanchez Contributed this Second Inner Plate**

In the email chain attached to the Complaint as Exhibit C, Plaintiff Sanchez confirmed that all other previous features of the container were not changed in the design shown in this January 12, 2018 email. *See, e.g.*, paragraph 15 of the Complaint. Thus, Plaintiffs entire allegation of Plaintiff Sanchez's alleged contribution to the inventions claimed in the '375 Patent appears to be this "second inner lid indicated in red" in the January 12, 2018 email (attached to the Complaint as Exhibit B), which is shown below.



**Plaintiffs Fail to Disclose Earlier Communications**

However, in making these allegations in the Complaint, Plaintiffs do not disclose that this January 12, 2018 email was not the first communication between the parties related to these containers.  Rather, the first communication between the parties occurred on December 21, 2017, more than three weeks before the January 12, 2018 email, when Defendant Karll called Plaintiff Sanchez.  During this December 21, 2017 telephone conversation, Defendant Karll discussed his designs with Plaintiff Sanchez.  During this December 21, 2017 telephone conversation, Defendant Karll emailed drawings and pictures of his designs to Plaintiff Sanchez. *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on October 26, 2020 as Document 14-1 at pages 28-39 of 72.  Relevant portions of these drawings and pictures are reproduced below:











**DEFENDANTS' FIRST RULE 11 MOTION**

### Mr. Sanchez's Email Actually Shows Defendant Karll's Design

The January 12, 2018 email simply reflects a design Defendant Karll shared with Plaintiff Sanchez on December 21, 2017, more than three weeks prior to the January 12, 2018 email. While Plaintiffs only allege that Plaintiff Sanchez contributed the "second inner lid indicated in red" in the January 12, 2018 email, there is nothing in the January 12, 2018 email that Defendant Karll had not previously shared with Plaintiff Sanchez on December 21, 2017.

The December 21, 2017 emails from Defendant Karll show the container body of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018          December 21, 2017          December 21, 2017

The December 21, 2017 emails from Defendant Karll show the inner lid of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018        December 21, 2017      December 21, 2017

The December 21, 2017 emails from Defendant Karll show the plate, which Plaintiffs refer to as referred to as a second the inner lid, of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018        December 21, 2017      December 21, 2017

The December 21, 2017 emails from Defendant Karll show the outer lid of Plaintiff Sanchez's January 12, 2018 email.



January 12, 2018        December 21, 2017

Thus, there was nothing in Plaintiff Sanchez's January 12, 2018 email that Defendant Karll had not previously shared with Plaintiff Sanchez.

**Defendant Karll Had Already Completed Conception**

Even if there were anything in Plaintiff Sanchez's January 12, 2018 email that was not shown in Defendant Karll's December 21, 2017 emails, it would not change the fact that Defendant Karll had completed conception of the claimed inventions prior to Plaintiff Sanchez's January 12, 2018 email.  Put another way, by the time Plaintiff Sanchez sent his January 12, 2018 email, Defendant Karll's conception of the claimed inventions had already been completed.  *See, e.g., Applied Med. Res. Corp. v. Tyco Healthcare Group LP*, 2014 U.S. Dist. LEXIS 101157 at 65, (CACD July 11, 2014).

"Conception is the touchstone of inventorship, the completion of the mental part of invention."  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  "Conception is the formation of a definite and permanent idea of the complete and operative claimed invention in the mind of the inventor." *Applied Med. Res. Corp.* at 101 (*citing Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)).  Conception therefore speaks to the inventions, as claimed in the '375 Patent.

Claims 1 and 18 of the '375 Patent each recite a "child resistant container." FIG. 1, among others, of the '375 patent shows an embodiment of a "child resistant container," with the container identified by reference numeral 100.



FIG. 1

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show a "child resistant container," as recited in claims 1 and 18 of the '375 Patent.

## Child- Resistant Container





Claims 1 and 18 of the '375 Patent also each recite "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall." FIG. 2B, among others, of the '375 patent shows an embodiment of "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall," with the container body identified by reference numeral 101.



FIG. 2B

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a container body having a central longitudinal axis, a closed base, an open top and an exterior wall," as recited in claims 1 and 18 of the '375 Patent.



Claims 1 and 18 of the '375 Patent also each recite "a cap assembly configured to couple to the container body for closing the container." FIGs. 1, 3B, and 3C, among others, of the '375 patent show an embodiment of "a cap assembly configured to couple to the container body for closing the container," with the cap assembly identified by reference numeral 114.



The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a cap assembly configured to couple to the container body for closing the container," as recited in claims 1 and 18 of the '375 Patent.

**DEFENDANTS' FIRST RULE 11 MOTION**



Claims 1 and 18 of the '375 Patent also each recite "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface."  FIGs. 1, 3A, 3B, and 3C, among others, of the '375 patent show an embodiment of "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface," with the metal inner cap identified by reference numeral 105 and the metal outer cap identified by reference numeral 102.

**DEFENDANTS' FIRST RULE 11 MOTION**



FIG. 1

FIG. 3A

FIG. 3B

FIG. 3C

The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "wherein the cap assembly comprises a metal inner cap configured to couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface," as recited in claims 1 and 18 of the '375 Patent.



Claims 1 and 18 of the '375 Patent also each recite "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap."  FIGs. 3D, 3E, 5B, and 6, among others, of the '375 patent show several embodiments of "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap," with the plate identified by reference numeral 110.



FIG. 3D

FIG. 5B

FIG. 3E

FIG. 6

The drawings attached to Defendant Karll's December 21, 2017 emails show one embodiment of "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.



The above embodiment of the metal plate is exactly the embodiment shown in Fig. 5A of the '375 Patent.



FIG. 5A



The '375 Patent                    Defendant Karll's December 21, 2017 email

The January 3, 2018 quotation, attached to the Complaint as Exhibit A, refers to Defendant Karll's design as a "[r]ound [t]in [c]ontainer – [c]hild [r]esistant 3-piece mushroom lid with debossed plate glued inside the lid with screw lid cap locked inside the outer lid and seamless bottom."  The January 12, 2018 email, attached to the Complaint as Exhibit B, referring to Defendant Karll, explains that "your inner plate construction which was going to be glued to the inside of the outer lid."  Thus, there can be no credible dispute of the fact that Plaintiffs understood that Defendant Karll's design included, at least as of December 21, 2017, that "the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.

Thus, the drawings and pictures attached to Defendant Karll's December 21, 2017 emails show that Defendant Karll, by that time, had completed conception of at least one embodiment of "[a] child resistant container, comprising: a container body having a central longitudinal axis, a closed base, an open top and an exterior wall; and a cap assembly configured to couple to the container body for closing the container; wherein the cap assembly comprises a metal inner cap configured to

couple to the container body and a metal outer cap coupled to the inner cap, each of the inner and outer caps having a top with a top surface and a bottom surface; a metal plate disposed between the inner cap and the outer cap , wherein the plate is rotationally and axially fixed relative to the outer cap," recited in claims 1 and 18 of the '375 Patent.

It is important to note, however, that the "metal plate" recited in claims 1 and 18 of the '375 Patent is not expressly limited to this exact embodiment. Of course, the designs that Defendant Karll shared with Plaintiff Sanchez on December 21, 2017 were not limited to this exact embodiment either.

The pictures attached to Defendant Karll's December 21, 2017 emails show another embodiment of "a metal plate disposed between the inner cap and the outer cap, wherein the plate is rotationally and axially fixed relative to the outer cap," as recited in claims 1 and 18 of the '375 Patent.



While apparently not in dispute, the designs Defendant Karll shared with Plaintiff Sanchez on December 21, 2017 also showed the other limitations of the claims. For example, the drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a first coupler coupled to the inner cap" comprising one or more grooves.



The drawings and pictures attached to Defendant Karll's December 21, 2017 emails show "a second coupler coupled to the plate" comprising one or more tongues.





### Defendant Karll's Conception Was Complete and Operative

The pictures attached to Defendant Karll's December 21, 2017 emails actually show a fully operative prototype. Defendant Karll even sent Plaintiffs a "functional prototype" by January 4, 2018. *See, e.g.*, Exhibit A. Exhibit A shows Defendant Karl asking for Plaintiffs address in China and confirming shipment of

the prototype. This prototype was substantially as shown in the pictures attached to Defendant Karll's December 21, 2017 emails.

The fact that Defendant Karll's designs, shown in his December 21, 2017 emails to Plaintiff Sanchez, were complete and operative is not in dispute. Nothing in the Complaint, or Plaintiff Sanchez's January 12, 2018 email attached thereto, suggest that the design shown in the drawings and pictures attached to Defendant Karll's December 21, 2017 emails is inoperative. Rather, Plaintiff Sanchez's January 12, 2018 email merely suggested adopting one of Defendant Karll's embodiments over another, explaining that one "would have been more costly." *See* Exhibit B to the Complaint.

Thus, there is no legitimate argument that Defendant Karll did not have complete conception of multiple operative embodiments of the claimed invention well before Plaintiff Sanchez's January 12, 2018 email.

**Plaintiffs and Their Counsel Knew of Defendant Karll's Earlier Conception**

It should be beyond dispute that Plaintiff Sanchez was aware of Defendant Karll's emails, and the designs shown therein, no later than December 21, 2017. Since Plaintiff "Sanchez is the President and Director of Plaintiff corporation, Imprenta," as explained in paragraph 3 of the Complaint, Plaintiff Imprenta was also aware of Defendant Karll's emails, and designs, no later than December 21, 2017.

While Plaintiffs may not have been forthcoming with their counsel, on April 7, 2020, counsel for Defendants informed counsel for Plaintiffs of Defendant Karll's December 21, 2017 emails, the designs shown therein, and how Plaintiffs inventorship allegations were frivolous, since everything in Plaintiff Sanchez's January 12, 2018 email was shown in Defendant Karll's December 21, 2017 emails. *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on

October 26, 2020 as Document 14-1 at pages 28-39 of 72.  Thus, counsel for Plaintiffs was aware of Defendant Karll's December 21, 2017 emails, and the designs shown therein, no later than April 7, 2020.

## ALLEGED INEQUITABLE CONDUCT

In paragraph 24 of the Complaint, Plaintiffs and their counsel allege "Defendants caused the application which matured into the '375 Patent to be filed with full knowledge that the subject matter of the application had previously been invented by another and was described in a printed publication in the United States by Plaintiffs more than one year prior to the April 11, 2019 filing date thereof."  In paragraph 26 of the Complaint, Plaintiffs and their counsel allege "Mike Sanchez's writings, email messages, attachments, and other printed publications constitute a valid reference that should have been disclosed to the patent examiner by Defendants."  Finally, in paragraph 28 of the Complaint, Plaintiffs and their counsel allege that failure to disclose these "publications" was fraud and constitutes inequitable conduct.

As an initial matter, while Plaintiffs point to an April 11, 2019 filing date, they know full well that the application that matured into the '375 Patent has an effective filing date of April 12, 2018.  *See* paragraph 16 of the Complaint.  Thus, nothing they point to occured more than a year before the effective filing date of the '375 Patent.

Fed. R. Civ. P. 9 requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiffs point to nothing other than "Mike Sanchez's writings, email messages, attachments, and other printed publications."  While they do not identify any specific documents with respect to this alleged fraud, Plaintiff Sanchez's January

12, 2018 email is attached to the Complaint, and therefore presumably forms the basis for this allegation. However, nothing in that email, or anything referenced in the Complaint, constitutes a valid prior art reference under well-established patent law.

35 U.S.C. 102(a)(1) states "[a] person shall be entitled to a patent unless - the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. 102(b)(1)(A) states "[a] disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if - the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor."

### Everything Plaintiffs and Their Counsel Cite Was From Defendant Karll

As discussed above, with respect to their frivolous inventorship claims, everything shown in Plaintiff Sanchez's January 12, 2018 email was shown in Defendant Karll's December 21, 2017 emails. Thus, anything to which Plaintiff's can point is "by another [(Plaintiff Sanchez)] who obtained the subject matter disclosed directly or indirectly from the inventor [(Defendant Karll)]. Because Plaintiff Sanchez's January 12, 2018 email was "made 1 year or less before the effective filing date," April 12, 2018, it "shall not be prior art to the claimed invention under subsection (a)(1)." Thus, at least because Plaintiff Sanchez's January 12, 2018 email is not prior art, there can be no need to disclose it to the Patent Office.

Perhaps more troublingly, in paragraph 25 of the Complaint, Plaintiffs and their counsel allege "Defendants were aware of the existence of the aforementioned printed publication at least as early as January 1, 2018." Yet, they do not explain

how it is possible for Defendants to be aware of Plaintiff Sanchez's January **12**, 2018 email "at least as early as January **1**, 2018." Defendants can only assume that this is a typographical error, but it is at best unclear.

### Nothing Plaintiffs and Their Counsel Cite was Publicly Available

In any case, in spite of their assertions, nothing they point to was actually "a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention," under 35 U.S.C. 102(a)(1).

Plaintiffs' counsel knows full well that "'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication.'" *In re Hall*, 781 F. 2d 897, 899 (Fed. Cir. 1986). "A reference is considered publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Jazz Pharmaceuticals v. Amneal Pharmaceuticals*, 895 F. 3d 1347,1355-56 (*quoting In re Wyer*, 655 F.2d 221, 226 (CCPA 1981)). Plaintiffs can point to nothing that constitutes a "printed publication," as that term is used in 35 U.S.C. 102, and presumably implied in the Complaint. *See, e.g., In re Bayer*, 568 F.2d 1357 (CCPA 1978) (an uncatalogued, unshelved master's thesis was not publicly accessible even where it was submitted to a university library); *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989) (student undergraduate theses were not publicly accessible because "they had not been either cataloged or indexed in a meaningful way"). Plaintiffs can point to nothing that was submitted to any publicly accessible repository, much less "cataloged or indexed in a meaningful way." This is all well settled law, of which counsel for Plaintiffs should be well aware.

Rather, all Plaintiffs can point to are private emails between Plaintiff Sanchez and Defendant Karll.  In fact, Plaintiffs acknowledge that these emails were private, contradicting themselves on this point.  For example, in paragraph 32 of the Complaint, Plaintiffs and their counsel allege "Mr. Sanchez privately communicated his inventions to Defendant Karll, under the protection of a mutual non-disclosure agreement."  It should be beyond dispute that anything "privately communicated … under the protection of a mutual non-disclosure agreement" is not publicly available.

Plaintiffs have pointed to nothing that can possibly be considered a "printed publication," as that term is used in 35 U.S.C. 102 precisely because there is nothing, certainly nothing of which Defendants were aware.  At least because there is nothing properly constituting prior art of which Defendants were aware, that they did not disclose to the Patent Office, there was no fraud and no inequitable conduct. Plaintiffs' counsel knows this to be true.  Admittedly, Plaintiffs themselves may not be aware of the law; but, that is why they hired counsel.

## PLAINTIFFS' COUNSEL CONDUCTED NO INVESTIGATION

It would appear that Plaintiffs' counsel has not conducted any meaningful investigation, much less "a reasonable and competent inquiry."  This was apparent in April 2020, when Defendant's counsel sent Plaintiffs' counsel at letter detailing information he apparently did not have or appreciate.  *See* Declaration of Frederick M. Douglas, filed by counsel for Plaintiffs on October 26, 2020 as Document 14-1 at pages 28-39 of 72.   Plaintiffs' counsel has never responded to this letter, much less rebutted the evidence Defendant's counsel presented therein.  In fact, the Complaint in this case ignores and omits the evidence Defendant's counsel

presented in that letter.  Rather, Plaintiffs' counsel has apparently chosen to blindly
charge ahead.

## **BEHAVIOR OF PLAINTIFFS COUNSEL WARRANTS SANCTIONS**

Sanctions imposed under Rule 11 are "to deter repetition of such conduct or
comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Plaintiff's counsel knew, before filing the Complaint, that the '375 Patent
has an effective filing date of April 12, 2018.  Plaintiff's counsel knew, before filing
the Complaint, that Mr. Sanchez did not legally "conceive" of any of the inventions
described in the '375 Patent, if for no other reason than Mr. Karll had previously
conceived of those inventions and communicated them to Mr. Sanchez.  Plaintiff's
counsel knew, before filing the Complaint, that Mike Sanchez's email messages
and     attachments     sent     to     Defendants,     particularly     those     "privately
communicated…under the protection of a mutual non-disclosure agreement," as
described in paragraph 32 of the Complaint, are not and could never be "printed
publications" or any other form of "valid reference that should have been disclosed
to the patent examiner," as suggested in paragraph 26 of the Complaint.

In the face of clear evidence, provided by Defendants' counsel before the
Complaint was filed, that any allegation of improper inventorship or inequitable
conduct was completely baseless, counsel for Plaintiffs signed and filed the instant
Complaint with this Court, including these allegations.  This action should be
sanctioned to deter similar future conduct, as well as to compensate Defendants for
their attorneys' fees and expenses in defending such baseless claims.  The need to
deter similar future conduct is especially important here, where counsel for
Plaintiffs has previously been sanctioned for signing and filing recklessly baseless
claims, and has apparently not changed his ways.  *R. Prasad Indus. v. Flat Irons*

*Envtl. Solutions Corp.*, 2014 U.S. Dist. LEXIS 133560, at \*24 (D. Ariz. Sep. 23, 2014), *aff'd sub nom., R. Prasad Indus. v. Douglas*, 673 Fed. Appx. 676 (9th Cir. 2016).

### BEHAVIOR OF PLAINTIFFS WARRANTS SANCTIONS

While monetary sanctions cannot be imposed "against a represented party for violating Rule 11(b)(2)," under Fed. R. Civ. P. 11(c)(5)(A), Plaintiffs themselves appear to be pursuing this action to harass Defendants, or for some other improper purpose. Fed. R. Civ. P. 11(b)(1).  At the very least, as explained above, Plaintiffs were well aware that the allegations in the Complaint are baseless, have no evidentiary support, and are premised on intentional omission of key facts.  Fed. R. Civ. P. 11(b)(3).  Thus, Plaintiffs themselves should also be sanctioned to deter similar future conduct, as well as to compensate Defendants for their attorneys' fees and expenses in defending such baseless claims.

Dated: August 17, 2021      Respectfully submitted,

witkow | baskin
Mackey Law Firm PLLC

By: /s/ Michael C. Mackey
Brandon J. Witkow
Cole Mackey

*Attorneys for Defendants*
NICHOLAS PATRICK KARLL & ECO PACKAGING SOLUTIONS

### CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2021, I served the foregoing document

**DEFENDANTS' FIRST RULE 11 MOTION**

by email attachment, pursuant to mutual agreement, on counsel for Plaintiffs Mike Sanchez and Imprenta Services, Inc., Frederic M. Douglas (fdouglas@cox.net).

<u>/s/ Michael C. Mackey</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2021, I served the foregoing document

**DEFENDANTS' FIRST RULE 11 MOTION**

by email attachment, pursuant to mutual agreement, on counsel for Plaintiffs Mike Sanchez and Imprenta Services, Inc., Frederic M. Douglas (fdouglas@cox.net).

<u>/s/ Michael C. Mackey</u>

# EXHIBIT

# A

---------- Forwarded message ---------
From: <tinking1@vip.163.com>
Date: Wed, Jan 3, 2018 at 5:03 PM
Subject: Re: Re: 3D printing Files for tooling samples - Tinking USA
To: Nic Karll <nic@ecopackagingsolutions.com>, dayrone@tinkingusa.com <dayrone@tinkingusa.com>
Cc: mike <mike@tinkingusa.com>


Dear Nic,


Noted and clear we will trace sample and make drawing once receipt.

Regards,

Edward

_____

_____

**From:** Nic Karll

**Date:** 2018-01-04 02:43

**To:** Dayron Escobar

**CC:** Mike Sanchez; tinking1

**Subject:** Re: 3D printing Files for tooling samples - Tinking USA

Hi Mike, Dayron, and Edward,


I have shipped the functional prototype with 2 different height bodies (the shorter 1 is the desired height) as well as a seamless slip-lid tin that will be the same outer look (silhouette) of the production level container.


Tracking number 1za4y0040458094943


Let me know if you have any questions.


Thanks,

Nic


Thanks,

Nic Karll

Chief Executive Officer

tel: 314-974-5769

email: nic@ecopackagingsolutions.com

website: www.ecopackagingsolutions.com

This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s).  Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. Eco Packaging Solutions is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail.  Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent

those of the company.

On Tue, Jan 2, 2018 at 8:49 PM, Dayron Escobar <dayrone@tinkingusa.com> wrote:

Hi Nic,

Please find below:

Contact: Edwad Yu

TIN KING (CHINA) MFG CO LTD

Wu Lian, Xin Xing Industrial Zone,

FengGang, DongGuan,

Post Code: 523695 CHINA

Factory Tel: (86) 769 87501848 (ext.8008)

Edward – Nic is sending the prototype sample for Eco Packaging Solutions for better understanding and sampling.

Best Regards,

Dayron Escobar

Tin King USA

(972) 759-0141 ext. 111

www.tinkingusa.com

Disney Certified # P236 - 3505 - 9

ISO 9001:2000 Certified # 110604012

**De:** Nic Karll [mailto:nic@ecopackagingsolutions.com]
**Enviado el:** Tuesday, January 02, 2018 10:57 PM
**Para:** Dayron Escobar; Mike Sanchez
**Asunto:** Re: 3D printing Files for tooling samples - Tinking USA


HI Dayron,


Per our conversation please send me the address to your factory in China so that I can send the prototype.


Thanks,

Nic


Thanks,

Nic Karll

Chief Executive Officer

tel: 314-974-5769

email: nic@ecopackagingsolutions.com

website: www.ecopackagingsolutions.com



This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s).  Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. Eco Packaging Solutions is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail.  Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the company.